Booth, J.,
delivered the opinion of the court:
The claimant, Frank W. Mahin, seeks reimbursement for payment of salary allowed by him while acting as consul of the United States at Reichenberg, Austria, to Anton Schless-' ing, his consular agent, then stationed at Haida, Austria, Avitliin his consular district.
The findings disclose that claimant assumed charge of his consular office on February 1, 1898, succeeding George R. Ernst; that during the incumbency of Mr. Ernst, Antón Schlessing had likewise been his consular agent at Haida, and as such had transmitted to Mr. Ernst before his retirement from office a full account of receipts and disbursements of fees made by him as such agent from July 1, 1897, to January 31, 1898, the date of Mr. Ernst’s retirement.
It appears from this statement of accounts submitted by Anton Schlessing, as aforesaid, that he retained from the fees then accumulated in his hands the sum of $1,000, which amount was credited to the account of Mr. Ernst by the Department of State as salary alloAved to said Schlessing, consular agent at Haida, Austria, for the fiscal year ending June 30, 1898. The claimant herein, notwithstanding his knowledge of said settlement, permitted said - Schlessing, then his consular agent at Haida, to deduct from fees thereafter collected by him as such consular agent the sum of $413.90, pro rata compensation claimed to be due him for the like period from January 31, 1898, to July 1, 1898, thus making a duplicate payment of pro rata compensation for this period.
Sections 1703 and 1733 of the Revised Statutes of the *4 United States, and paragraph. 510 of the Consular Regulations of 1896, provide as follows:
“ Seo. 1703. Every vice-consul and vice-commercial agent shall be entitled, as compensation for his services as such, to the whole or so-much of the compensation of the principal consular officer in whose place he shall be appointed as shall bo determined bj^ the President, and the residue, if any, shall be paid to such principal consular officer; and every consular agent shall be entitled, as compensation for his services, to such fees as he may collect under the regulations prescribed by the President governing the subject or fees, or to so much thereof as shall be determined by the President; and the principal officer of the consulate or commercial agency within the limits of which such consular agent shall be appointed shall be entitled to the residue, if any, in addition to any other compensation allowed him by law for his services therein.”
“ Sec. 1733. All moneys received for fees at any vice-consulates or consular agencies of the United States beyond the sum of one thousand dollars in any one year, and all moneys received by any consul or consul-general from consular agencies or vice-consulates in excess of one thousand dollars in the aggregate from all such agencies or vice-consulates, shall bo accounted for to the Secretary of the Treasury, and held subject to his draft or other directions.”
“ 510. Consular agents: Consular agents are entitled, as compensation for their services, to such pay from, the Government as their official services to American vessels and seamen may entitle them (paragraph 520) and to such fees as they may collect under these Regulations or to so much thereof as shall be determined by the President, not to exceed $1,000 a year. And the principal officer of the consulate or commercial agency within the limits of which such consular agent is appointed is entitled only to the residue, if any, in addition to any other compensation allowed 'him by law for his services therein. But all moneys received for fees at any vice-consulates or consular agencies of the United States beyond the sum of $1,000 in any one year, and all moneys received by any consul-general or consul from consular agency or vice-consulates in excess of $1,000 in the aggregate from all such agencies or vice-consulates, must be accounted for to the Secretary of the Treasury and held subject to his draft or other directions.”
It is to be observed that the sections of the statute quoted above and consular regulation 510, prescribed by the President in pursuance thereof, provide expressly as to the amount *5 . of tbe compensation' allowed consular agents and, to a limited extent, the manner of making settlements therefor. That is, any consular agent may retain from fees collected by him as such agent the sum of $1,000 per .annum, and this amount will be credited upon his accounts. There is, however, no express provision for quarterly or semiannual accounting by the consular agents, and no consular regulation is called to our attention providing for or prohibiting the. same.
The material question, therefore, presented for our consideration is, Was the allowance of full compensation for the entire fiscal year ending June 30, 1898, to Anton Schless-ing as such consular agent by Consul Ernst warranted in law? If so, he was fully compensated for his services to July 1, 1898, and any subsequent allowance of fees after-Avards collected by him as compensation for the same period was without warrant of legal authority and therefore paid to him under a misapprehension of the law, and can not be recovered by the claimant in an action against the United States.
A controversy similar to this was the subject of judicial investigation in the case of Marston v. United States (71 Fed. Rep., 496), cited in claimant’s brief. It was there held that a consular agent was entitled to deduct from any quarter of the fiscal year fees sufficent to equal his full annual compensation allowed by law. A consular agent obtains his compensation from legal fees coming into his custody, and the amount of his compensation is dependent upon his receipts. He may receive within the first quarter of the fiscal year a sum sufficient, or nearly so, to cover his compensation for the entire year, and retain the same as his annual compensation, for he may not thereafter receive additional collections during the fiscal year of sufficient amount to make up his maximum allowance..
No statute or consular regulation requires him .to remit to his superior officer any sum other than the surplus over the maximum amount fixed by law' as his annual compensation. If, as was said in Marston v. United States (supra), “ before the end of the fiscal year, the agent * * * had gone out *6 of office, a readjustment of bis account to that date would have become necessary, in which, besides additional collections, he or his representative would have been required, to surrender the unearned part of the sum so retained * * *.
But, having remained in office, and having taken his compensation for the entire yearj as he had the right to do, out of the fees collected before October 27, the agent was bound to account for the fees thereafter collected.”
Thus it seems entirely clear that a consular agent is not precluded from charging the first funds coming into his custody as such agent with the payment of his annual compensation as the same becomes due. If for any reason he retires from office during the current fiscal year, he is nevertheless authorized to deduct from said funds so retained by him his fro rata compensation up to the date of his retirement. (R. S., sec. 2687.)
The evident purpose of the statute and consular regulation 510 was not only to provide compensation for labor performed, but to simplify settlements with consular agents and stimulate their activity in the discharge of their duties by allowing them a specified sum out of the fees of their offices.
A consular agent has no direct connection in the matter of accounting with the Department of State. Fie is directly under the control and supervision of the consul within whose district his agency is located, and to him only does he report. There is nothing in any law or.consular regulation brought to our attention which requires such agent to render his accounts except at the close of the fiscal year. True it is that his superior officer might call upon him for more frequent accoxmtings, but no authority appears by which he could enforce a surrender of any portion of the fees of the agent’s office to- him save the surplus over the maximum allowance for his annual compensation, which surplus the consul must cover into the Treasury of the United States. The reason for this is that if the consular agent should pay over the money to the consul at the end, say, of the first quarter, and the consul should cover it into the Treasury, there would be no way in which the agent could be paid if *7 the fees of the remaining three-quarters happened to be insufficient to make up his annual compensation. At the same time a consular agent can not arrogate to himself judicial powers and seek by itemization of his account to change the character of the funds received by him within the scope of his office.
It is asserted upon the part of the claimant that Mr. Ernst failed to comply with consular regulations in the allowance of said compensation by failing to require a voucher for the amount, thereby rendering said payment illegal. With this contention we are unable to agree. It is apparent that such a regulation existed and in this instance was overlooked, yet it can not be sucessfully maintained that a mere omission upon the part of a public officer to strictly comply with the departmental rules and- regulations (his conduct being otherwise entirely lawful) in the disbursement of funds coming under his supervision will render the Government liable in an action at law for reimbursement to one who, succeeding him in said office with full knowledge of the transaction, voluntarily duplicates the former payment.
The claimant also contends that he acted in perfect good faith and exercised due caution and diligence in making the additional allowance of $413.90 to Agent Schlessing. With the first contention we have no dispute. Nothing appears to question the honesty and perfect good faith of the claimant throughout this entire transaction. Upon the question of diligence and caution exercised we must take issue. The precautionary correspondence conducted by claimant prior to this allowance should have been persisted in until a satisfactory answer was forthcoming from the Department of State, especially so in view of his previous' knowledge of the transaction. The approval of the accounts of Consular Agent Schlessing could have been held in abeyance until the legality of the allowance was fully determined. The submission to the Comptroller of the Treasury, upon request of consul to Department of State, for decision upon the disputed question, was clearly available and claimant’s failure to take advantage of the same places him in the position of having acted at his own peril.
We are therefore of the opinion that the credit given to *8 Consular Agent Schlessing by Consul Ernst for the sum of $1,000 covered his salary in full for the fiscal year ending June 30, 1898; that in making said allowance Consul Ernst acted clearly within his authority and law governing the transaction, and it was the duty of the claimant herein to account to the Treasury Department for all fees received by him from Agent Schlessing from January 31, 1898, until July 1, 1898.
The judgment of the court is that the petition be dismissed.